WARREN COUNTY v. THOMAS C. CATCHINGS.

[46 South. 709.]

PUBLIC LANDS. *Sixteenth section. School lands. Lands in lieu. Location. British grants.*

> Where the title of a grantee in a British grant was confirmed by an act of congress, the secretary of the treasury was thereafter without power to locate the granted land as school lands, in lieu of a sixteenth section; such a location was absolutely void and not validated by the government's subsequent acquisition of title to the land.

FROM the chancery court of Warren county.

HON. J. S. HICKS, Chancellor.

Warren county, appellant, was complainant in the court below; Catchings, appellee, was defendant there. The lands in suit were claimed by the county as school lands in lieu of a sixteenth section. From a decree sustaining a demurrer to the bill of complaint and dismissing the suit the complainant appealed to the supreme court.

The land in controversy is situated in section 34, township 16, range 3, and overlaps section 21 of said township, several governmental surveys having been made of the locality. The articles of agreement and cession between the United States and the

state of Georgia are to be found in the revised Code of Mississippi, 1857, page 645. On March 3, 1803, congress passed an act providing for the disposal of lands of the United States south of the state of Tennessee, which act provided that all lands acquired from the state of Georgia were to be offered for sale to the highest bidder, according to certain prescribed regulations; provided, however, that all sections numbered 16 should be reserved in each township for the support of schools. It also provided that the title to lands held by persons under former British and Spanish grants should be confirmed, and by its term, wherever a sixteenth section should fall upon land held by virtue of a British or Spanish grant, the secretary of the treasury was empowered to locate another section in lieu thereof for the use of schools. The secretary of the treasury found that section 16, township 16, range 3 east, had already been claimed by virtue of a British grant, and in lieu thereof set apart a body of land described as section 21, which included section 34 involved in this suit; section 34 containing only about 95 acres.

The bill alleged that the title of one John Girault was confirmed by act of congress to a certain British grant of land, a portion of which overlapped territory covered by section 21, and that this land was not public land on April 16, 1816, when the secretary of the treasury set apart section 21, which included the grant to John Girault, for school purposes in lieu of section 16. On May 7, 1822, the entire interest and claim of John Girault was relinquished to the United States, which then, for the first time, became the owner of the land covered by this British grant. The contention of the bill is that, by the acquisition of this title thus obtained by the United States, section 34, which is alleged to be included in section 21, immediately enured by operation of law to the state of Mississippi, in trust for the inhabitants of township 16, range 3 east, for school purposes. The bill charged that the trustees of the township never acquired possession of that portion of section 21 covered by the land embraced in the Girault claim. In 1834 William Vick

and Anthony Glass entered the land known as section 34, which is concluded within the Girault grant, and obtained a patent therefor from the United States; and it is through them that appellee claims the property involved in this litigation, which is a part of said section 34. Appellant contends that the patent issued to Vick and Glass was void, and that appellee, therefore, has no title to the land in controversy.

Appellee demurred to the bill on the ground that the United States had no title to the property in question on April 16, 1816, when section 21 was set apart for school purposes, because the secretary of the treasury had no right to locate, in lieu of a sixteenth section, another section upon land already granted by an act of congress or claimed by virtue of a British grant; because the United States acquired title by purchase from Girault, and conveyed the same to those through whom defendant derives title; because by the terms of the act of cession from the state of Georgia and the acts of congress the title to all lands claimed by persons under British grants was confirmed in the owner, and could not be disposed of by the United States for any purpose whatever; because under the law (Code 1857, c. 57, § 1, and section 2, art. 25) the state is debarred from commencing any action for the recovery of the lands in controversy, except within ten years after the right of action accrued, and that, the right of action having accrued in 1822, this action was barred by the statute of limitations before the adoption of the constitution of 1890, exempting the state from the operation of the statute of limitations, because the state is estopped by its failure for eighty-five years to assert any title to the land in controversy.

*McKnight & McKnight,* for appellant.

By the demurrer it is admitted: That section 16, township 16, range 3, fell upon a British grant.

That section 21 was selected as lieu land in 1816 in accordance with a survey made by Thomas Freeman which marked

out and defined said section 21 on the ground.    That by said survey said section 21 contained 606 acres.

That a part of section 21, as laid down by the Freeman survey, was overlapped by a part of a British grant to one John Girault.

That there was no section 34 on the Freeman survey, which survey was made between 1810 and 1817.

That in 1828-1829 the government made a resurvey by which section 34, T. 16, R. 3, was created in part out of that part of section 21 which had formerly been covered by the claim of Girault, the eastern part of section 34 being "wedged in" between sections 22 and the remainder of section 21, T. 16, R. 3.

That the lot in dispute is a part of section 21 by the survey of 1816 and is included in that part of 21 which was covered by the Girault claim and is a part of that part of section 21 by the survey of 1816 which was cut off from section 21 and taken into the formation of section 24 by the resurvey of 1828 and 1829.

That after the resurvey of 1828 and 1829, William Vick and Anthony Glass undertook to enter a part of section 34, township 16, range 3, being the land covered by the Girault claim and including the land in dispute here,, and that their claims of right of entry were disallowed by Commissioner Wailes because the lands sought to be entered conflicted with the land reserved for the use of schools in the township.

That afterwards in 1834, said Vick and Glass renewed their claim to enter a part of section 34, when the then commissioner, Hayward, losing sight of the right of the inhabitants of the township and being governed by the resurvey in 1828, allowed the land, including the land in dispute, to be entered and issued patents therefor to certain parties under whom the appellee claims the land in dispute in fee.

That such portion of section 21 as was covered by the overlapping of the Girault claim belonged to Girault at the date of

the selecting of section 21 in lieu of section 16 and that the date of this selection was April 6th, 1816, and it is also admitted that by authority of an act of congress passed May 7th, 1822, the legal representatives of Girault on April 10th, 1824, conveyed certain tracts of land, one of which included the land which overlapped section 21, township 16, range 3, unto the government of the United States of America and to their assigns, and it is also admitted that the schools have never gotten this land.

The obligation which rested upon the government to act in the matter of providing a lieu section for school purposes where section 16 had been covered by a British grant, arose under and by virtue of the solemn obligation imposed by the cession from Georgia to the United States and does not depend upon authority given by the act of congress of April 21, 1806. This act of congress was merely directory to the officers of the government in the performance merely of a solemn obligation created by the compact with Georgia and was not intended as a limitation upon or impediment to the fulfillment of that obligation. The right of the state rested in compact binding the public faith and dependent for execution upon the political authorities of the government, both before and after the passage of the act of April 21, 1806. *Jones v. Madison County,* 72 Miss. 777, 18 South. 87, and cases there cited.

The act of congress referred to does not use the term "public lands" but its provision is "whenever the section No. 16 shall fall upon land already granted by virtue of any act of congress, or claimed by virtue of a British grant, the secretary of the treasury, shall locate another section in lieu thereof, for the use of schools, which location shall be made in the same township, if there be any other vacant section therein, and otherwise in an adjoining township." From this it will be seen that instead of saying "public lands" the section used the expression "if there be any other vacant section therein." To place the construction

upon this section which is sought to be placed thereon by the appellee in his demurrer would be, first, to make it entirely possible to deprive many townships of any school section at all, because by that strict construction under which this section is construed as a limitation or restriction upon the carrying out of the compact with Georgia, it would follow that in the case where a township in which section 16 was covered by a British grant, was surrounded by other townships in like condition with itself then the first township could have no school section because there was no public land either in it or in an adjoining township, and, second, to prevent the government from providing a section by acquisition from any source whatever. In other words, this construction goes to the ridiculous position that the laws of the United States of America prohibit any land from becoming school land if the title thereto has ever passed out of the government, although afterwards re-acquired by the government.

The fact that a portion of the land selected was claimed by Girault under a British grant which was confirmed as the effect of the general act of congress of 1812, did not prevent the government from acquiring the same from Girault, but, on the contrary, the government by confirming this claim was carrying out the terms of the compact with Georgia by which it was povided that the British grants should be confirmed. After this confirmation of Girault's claim he had the right to convey it to the government and the government had the right to acquire it and after the government acquired it there was nothing to prevent it from being selected as lieu lands and being used in carrying out the compact with Georgia, and it is begging the question to say that the provision in the act of cession and in the act of congress of April 21, 1806, which required the confirmation of British grants was in the nature of a covenant running with the land, preventing it from ever being acquired and used by the government in the performacn of its compact with Georgia.

If the government, after acquiring this property from Girault

could patent it to those under whom the appellee claims, it would with equal power have selected and appropriated said land for school purposes in lieu of section 16.

If the government could appropriate this Girault land to school purposes after the relinquishment by the Giraults in 1824 then what was to prevent it from selecting it for schools and then acquiring it; and yet, according to the position of appellee, here rests the pivotal point in this case, to-wit:   That the act of the government as to the selection of that part of section 21 which was overlapped by a part of a claim belonging to Girault at the time of the selection was absolutely .void because such part of section 21 belonged to Girault and was not public land at the date of selection.

Against this proposition the appellant's contention is that the government was under the compact obligation with Georgia to provide a section of land in lieu; of section 16 wherever section 16 had already been taken and finding section 16 had been taken in township 16, range 3 east of Warren county the government selected section 21, a part of which was overlapped by a part of the claim of one Girault, and with a section selected and approved, a part of which was public land and a part of which was not, the government acquired the title of Girault to itself and to its assigns and that when the government acquired the title of Girault to his claim in said section it was estopped to say that it had not conveyed to the state in perpetuity the land acquired from Girault, but that the title acquired by the government from Girault enured immediately to the state, or else that the state being the assign of the government took directly under the conveyance from the Giraults by virtue of the terms of said conveyance whereby the Girault claim was conveyed unto the government of the United States of America and to their assigns.

Every element necessary to the operation of the doctrine of estoppel by causing the title acquired by the government in 1824

from Girault to enure to the state of Mississippi in trust for schools is present in this case.

The selection and approval of section 21 as lieu land was all that was necessary to pass title to the state in trust for schools. *McCreery v. Haskell,* 119 U. S. 327.

The admission of a state into the Union vested it with title to all 16th sections or to lieu sections, as the case might be, without further grant or patent. *Hendricks v. Hughes,* 15 Wall. (U. S.) 123.

The title which the government undertook to convey by its selection and approval of 21 as lieu land for schools was not a quit claim as was contended by appellee in the court below, but was a perfectly legal title.    6 Ballard, sec. 710; *Hagan v. Ellis,* 39 Fla. 463, 22 South. 727.

*Catchings & Catchings,* for appellee.

The following authorities conclusively establish our contention. *Jones v. Madison County,* 72 Miss. 777, 18 South. 87; *Rabb v. Board of Supervisors of Washington County,* 62 Miss. 589; *Board of Supervisors v. East Mississippi Mills Co.,* (Miss.) 16 South. 210; *Grown v. Supervisors,* 54 Miss. 230; *Hargis v. Inhabitants of Congressional Township,* 29 Ind. 70; *Miller v. State,* 38 Ala. 600; *Burks v. Mitchell,* 78 Ala. 61; *Warren County v. Lamkin,* (Miss.) 46 South. 497; *Hedrick v. Hughes,* 15 Wall. (U. S.) 123, 21 L. Ed. 52; *Steel v. Smelting Company,* 106 U. S. 452, 1 Sup. Ct. 389, 27 L. Ed. 226; *Best v. Polk,* 18 Wall. (U. S.) 117, 21 L. Ed. 805; *Polk v. Windel,* 9 Cranch. 99, Fed. Cas. No. 11, 251; *Wilcox v. Jackson,* 13 Pet. (U. S.) 511, 10 L. Ed. 264; *Wright v. Roseberry,* 121 U. S. 519, 7 Sup. Ct. 985, 30 L. Ed. 1039; *Stoddard v. Chambers,* 2 How. (U. S.) 284, 11 L. Ed. 269; *Jackson v. Dilworth, Secretary of State,* 10 Ga. 772; *Clement v. Anderson,* 72 Miss. 522; *Beard v. Federy,* 3 Wall. (U. S.) 491, 18 L. Ed. 88; *Rice v. R. Company,* 1 Black (U. S.) 358, 17 L. Ed. 147; *Irvine v.*

*Irvine,* 9 Wall. (U. S.) 625, 19 L. Ed. 800; 11 Am. & Eng.
Ency. 393; *Childress County Land & Cattle Co. v. Baker,* 23
Tex. Civ. App. 451, 56 S. W. 759; 26 Am. & Eng. Ency. 428;
*Leavenworth R. Co. v. U. S.,* 92 U. S. 733, 23 L. Ed. 634;.
*Kansas Pac. R. Co. v. Dunmeyer,* 113 U. S. 629, 5 Sup .Ct. 566,.
28 L. Ed. 1122; *Hastings & Dakota R. Co. v. Whitney,* 132 U.
S. 357, 10 Sup. Ct. 112, 23 L. Ed. 363; *Bardon v. Northern
Pacific R. Co.,* 145 U. S. 535, 12 Sup. Ct. 856, 36 L. Ed. 806;
*King v. McAndrews,* 111 Fed. 863, 50 C. C. A. 29.

Argued orally by *Theodore McKnight,* for appellant and by
*T. C. Catchings, pro se.*

CALHOON, J., delivered the opinion of the court.

About ninety-five acres of land in the city of Vicksburg, in-
cluding the lot in controversy, were patented to Vick and Glass
in 1834. They, and those claiming under them, down to and in-
cluding appellee, have had possession under claim of ownership
undisputed for over eighty years. Before the patent to Vick
and Glass, and at the time of the "articles of cession and agree-
ment" between Georgia and the United States on April 24,
1802, the land belonging to one John Girault. Girault then had
title in virtue of a British grant. By act of congress of March
3, 1803, the lands of the Georgia cession were authorized to be
sold, reserving, however, the sixteenth section in each township
for the support of schools, and also providing that those holding
under British and Spanish grants should be confirmed in their
grants. These British and Spanish grants are also distinctly
recognized in the acts of congress of March 27, 1804, March 2,
1805, and April 21, 1806. By this last act of April 21, 1806, it
is declared that lands held by British grants "shall not be dis-
posed of until otherwise directed by congress," and that when a
section 16 falls within such a grant "the secretary of the treas-
ury shall locate another section in lieu thereof for the use of
schools," etc.

The title of Girault was confirmed by congress June 30, 1812,

2 Stat. 765, c. 110. With matters in this situation, on April 6, 1816, the secretary of the treasury located the Girault lands for schools in lieu of section 16. This location, under which appellant claims, and by which it must stand or fall, was without power, and was an absolute nullity, and the patent to Vick and Glass in 1834 was perfectly valid, and the decree sustaining the demurrer of appellee to the bill was correct. We are content with the authorities cited in the brief for appellee on this point, and do not lengthen this opinion by discussion, because it is unnecessary. While this much settles the case, and while it is unnecessary for the court to consider in consultation the other question, still, for myself, having carefully examined it, I am absolutely convinced that the bar of the statute of limitations was complete and perfect long before our constitution of 1890.

*Affirmed.*